UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

| | |
|---|---|
| OIL SPILL RESPONSE VESSELS, LLC, and DARREN K. BYLER, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF KODIAK, et al., <br><br> Defendants. | 3:23-cv-00067-SLG-MMS <br><br> **REPORT AND RECOMMENDATION ON MOTION TO TAKE JUDICIAL NOTICE [24] AND MOTIONS TO DISMISS [25–26]** |

This Court hereby issues its Report and Recommendation regarding the Motion to Take Judicial Notice, Dkt. 24, and the motions to dismiss, Dkts. 25–26. For the reasons stated below, each of these motions should be **GRANTED**. This matter should be **DISMISSED** with prejudice as to all claims against all parties. 28 U.S.C. § 636(b)(1)(B).

## I. FACTUAL BACKGROUND

For the purposes of these motions, this Court will present the allegations by Mr. Byler in his Complaint as a matter of fact. Unless otherwise stated, these matters should not be taken as a factual finding by this Court.

### a. Allegations in the Complaint.

The Plaintiffs to this suit are Oil Spill Response Vessels, LLC ("OSRV") and Darren K. Byler (together, the "Plaintiffs"). The Defendants are the City of Kodiak (the "City" or "Kodiak"), City Mayor Pat Branson, City Councilmembers Charles David, Terry J. Haines,

Richard Walker, John Whiddon, Laura Arboleda, City Manager Mike Tvenge, Deputy City Manager Josie Bahnke, and former City Harbormaster Mike Sarnowski (together, the "City Defendants"); and Cooper Curtis and Highmark Marine Fabrication, LLC (together, the "Highmark Defendants"). Collectively, these are the Defendants.

This suit arises primarily out of the December 2017 impoundment of the M/V Wild Alaskan (the "Vessel"). Compl. at 1–2.[1] Mr. Byler argues that personal disagreements between he and Mayor Branson caused the City Defendants to unlawfully impound and destroy his vehicle, using the law as a mere pretext. *Id.* He also asserts unrelated matters, such as defamation and a 2014/2015 disagreement with "Kodiak Female Politicians" that has not been properly developed for this Court's analysis. *Id.*

Byler argues that he was the sole owner of the Vessel (*id.* at 3),[2] but the City Defendants improperly refused to permit him to sell it. He argues that the City Defendants "nefariously sunk [his] vessel" without providing the proper notices as required by the law. *Id.* at 4. He argues that the Highmark Defendants were complicit in the City Defendants' actions, removing valuable equipment from the Vessel and eventually scuttling the Vessel in July of 2021. *Id.* at 9–10.

Mr. Byler seeks $6 million in relief via Sec. 1983. In support of this relief, Mr. Byler refers to several state statutes and a few federal criminal statutes pertaining to unlawful destruction of vessels and conspiracy to do the same. *Id.* at 13–14.

---

[1] Mr. Byler initiated this case pro se. His Complaint does not comply with typical typographical and stylistic norms for pleadings. As such, this Court will refer to page numbers on the Complaint, rather than paragraphs.
[2] The Defendants dispute this characterization.

### b. Factual Matters from Noticed Materials.

This Court is looking beyond the Complaint for these motions to dismiss. *See infra* for this Court's analysis on the Motion to Take Judicial Notice. While the below will be stated as a matter of fact, it does not reflect an affirmative factual finding by this Court. Instead, these matters are incorporated into the pleadings for the purpose of testing the sufficiency of the Complaint.

Exhibit 1 to Dkt. 24 is a January 11, 2018 administrative decision captioned "*In the Matter of Impound of the M/V Wild Alaskan*." It reflects that a hearing was held on January 5, 2018 and that the attendees included representatives from the City and Mr. Byler. The City had filed pre-hearing briefs, while Mr. Byler filed his materials after the hearing. The hearing officer considered his post-hearing filings.

The hearing officer applied the facts before it to the Kodiak City Code ("KCC"), finding violations including unpaid moorage charges, the absence of a moorage agreement, moorage in a restricted area without authorization, a lack of insurance coverage, failure to obey harbormaster orders to remove the Vessel from the harbor, and tampering with posted signs. The hearing officer denied Mr. Byler's request for release of the Vessel and directed him to his appealed rights in KCC 18.28.390(e). It is dated January 11, 2018 and reads that it was delivered via e-mail to Mr. Byler.

KCC 18.28.390(e) provides aggrieved parties the opportunity to appeal an adverse decision from a hearing officer to the Kodiak Superior Court within 30 days of the decision.

A review of the CourtView system[3] reveals that while Mr. Byler has been a prolific litigant in the past, there is no filing challenging the above administrative decision.

OSRV was dissolved on September 8, 2018, pursuant to a Certificate of Involuntary Dissolution/Revocation filed by the Commissioner of Commerce, Community, and Economic Development of the State of Alaska. Exhibit 2 to Dkt. 24. It reads that "[OSRV] will cease to exist as of the date of this certificate, except as provided for by Alaska Statutes."

## II. MOTION TO TAKE JUDICIAL NOTICE

The City Defendants asked this Court to take judicial notice of four groups of materials: (1) the Charter of the City of Kodiak; (2) the administrative decision dated January 11, 2018 captioned "*In the Matter of Impound of the M/V Wild Alaskan*" (Dkt. 24, Ex. 1); (3) that the administrative decision was not appealed to the Alaska Superior Court, as evidenced by a search of the state's CourtView system; and (4) that OSRV was dissolved pursuant to a "Certificate of Involuntary Dissolution/Revocation" dated September 8, 2018 (Dkt. 24, Ex. 2.). *See generally*, Dkt. 24. For each of these materials, the City Defendants provided credible state sources evidencing both the authenticity of the materials and the public access to the same. *Id.*

Mr. Byler responded in opposition.[4] First, he argued that the Kodiak City Code violates the United States Constitution, and therefore, should not be considered. Dkt. 55

---

[3] https://records.courts.alaska.gov/eaccess.
[4] He objected at Dkts. 30 and 55. Dkt. 55 appears to be a near copy of 30, so this Court will refer to the newer filing and the City Defendants' Reply following (Dkt. 56).

at 1. Second, he argued that the administrative hearing was unfair, so it should not be considered. *Id.* at 2–3. Third, he argued that the certificate of dissolution should not be considered because it "is a matter of dispute[,]" but "concedes that [OSRV] is no longer licensed within the State of Alaska as an LLC." *Id.* at 6. The City Defendants replied (1) that the constitutionality of the Kodiak City Code does not speak to whether this Court should take judicial notice of it; (2) that the administrative decision should be considered regardless of process because Byler participated in it, it is a matter of public record, and because Byler made key concessions regarding it in his Response; (3) that as an extension, this Court should take notice that the decision was not appealed; and (4) that Byler's concern about judicial notice foreclosing any factual arguments is unfounded. *See generally*, Dkt. 56.

Federal Rule of Evidence ("FRE") 201 permits a court to take judicial notice of "a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Matters of public record may be considered by a court without converting a Rule 12(b)(6) motion to a Rule 56 motion

for summary judgment.[5] Municipal ordinances,[6] notices of dissolution of companies,[7] and "records and reports of administrative bodies"[8] are proper for judicial notice.

This Court agrees with the City Defendants and will take judicial notice of the four groups of materials referred to in the motion. Each of these groups of materials is within the permissible realm of FRE 201. This Court is satisfied with the authenticity of the materials. Mr. Byler's objections do not persuade this Court. His arguments do not pertain to the reliability or accuracy of the documents. He only argues that they are not legitimate. For instance, regardless of the constitutionality of the Kodiak City Code, this Court is confident that the materials that it is considering are in fact parts of the Kodiak City Code. As to the administrative decision, this Court need not decide whether the process was fair to Byler before it can consider that such a determination was made. Regarding the Certificate of Dissolution, even if it were issued improperly, that would not change that it was issued and that OSRV does not currently exist. In short, the authenticity of these materials cannot be genuinely disputed.

This Court does not take lightly its decision to consider these materials. Parties are generally free to make their cases, and this Court will only consider these materials to the extent that it is comfortable that they represent facts which cannot reasonably to questioned

---

[5] *Lee vs. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).
[6] *Tollis, Inc. v. Cnty. of San Diego*, 505 F.3d 935, n 1. (9th Cir. 2007).
[7] *Successor Agency to Former Emeryville Redevelopment Agency v. Swagelok Co.*, 364 F. Supp.3d 1061, 1083 (N.D. Cal. 2019); *A.B. Concrete Coating Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 491 F. Supp.3d 727, n.3 (E.D. Cal. 2020).
[8] *Interstate Natural Gas Co. v. Southern California Gas Co.*, 209 F.2d 380, 385 (9th Cir.1953); *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n. 2 (9th Cir. 2006).

(even if they were contentious) to the extent that it informs for the limited purpose of these motions to dismiss. In this Court's analysis on the motions to dismiss, it will reference these materials as necessary without construing the motions as being for summary judgment. However, this Court will leave the ultimate determination of this motion for Chief Judge Sharon L. Gleason, who will review this Report and Recommendation and determine which facts are pertinent for his decision.

### III. MOTIONS PRESENTED

This Court was referred three motions. Dkt. 51. In addition to the Motion to Take Judicial Notice (Dkt. 24) discussed *supra*, this Court has two motions to dismiss before it. Dkts. 25 and 26. Both were filed under the Federal Rules of Civil Procedure 12(b)(1) (for jurisdictional deficiencies) and 12(b)(6) (for failure to state a claim).

Both the City Defendants and the Highmark Defendants ask this Court to dismiss the Plaintiffs' claims in their entirety. All Defendants argue (1) that OSRV lacks capacity to sue, and that Mr. Byler cannot act as a surrogate for it; and (2) that all of Mr. Byler's claims are time barred. *See generally*, Dkt. 25. The City Defendants also argue (1) that Mr. Byler has not pleaded a Sec. 1983 claim because it fails to allege a constitutional violation; (2) that those of the City Defendants that are, or were, councilmembers are immune from this suit; and (3) that the other city officials are entitled to qualified immunity. *Id.* The Highmark Defendants argue that Mr. Byler has not successfully pleaded a Sec. 1983 claim because he has not demonstrated how the Highmark Defendants acted under color of law or that they injured Mr. Byler. *See*, Dkt. 26.

Mr. Byler responded in opposition to both these motions. As to the Highmark Defendants, he argues (1) that the motion to dismiss is time barred because they had not filed an Answer prior to filing it;[9] (2) that various new factual assertions not found in the Complaint should compel this Court to deny; and (3) that maritime/admiralty law generally affords him relief, stated summarily. *See generally*, Dkt. 54. The Highmark Defendants replied, repeating many of their arguments in their initial brief. *See generally*, Dkt. 57.

As to the City Defendants, Mr. Byler argues (1) that newly-stated factual assertions should inform this Court, including an apparent altercation with the mayor at a grocery store; (2) that fraud defeats the protections of qualified immunity; (3) that the statute of limitations for fraud is applicable and that he filed within such period; (4) that the City is not entitled to sovereign immunity; (5) that he can assert claims on behalf of OSRV as the sole member and shareholder; (6) that he has pleaded the necessary facts for a Sec. 1983 claim; and (7) for the first time, that the Racketeering Influenced and Corrupt Organizations Act was violated. *See generally*, Dkt. 52. The City Defendants (1) replied that Mr. Byler's substantive new claims are mostly time barred; and (2) reiterated many of their initial arguments. *See generally*, Dkt. 58.

While this Court appreciates the City Defendants' more substantive response to Mr. Byler's new claims, this Court does not find their consideration necessary. As discussed *infra*, the motions presented here are intended to address the sufficiency of the pleadings, i.e., the Complaint at Dkt. 1. The present action was filed in March of 2023, and in June

---

[9] This Court will reject this argument here. Motions to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) do not contain a requirement that an answer be filed.

of the same year, Mr. Byler moved to amend his Complaint. Dkt. 28. The Court granted the motion in March 2024, denying the present motions as moot and instructing Byler to refile within seven days. Dkt. 45. Mr. Byler later noticed the Court that "after careful consideration, consultation, and review with Counsel, Plaintiff hereby notifies the Court that he is not filing an Amendment to his original Complaint." Dkt. 46. The Court then reopened the present motions after receiving a motion for reconsideration from the Defendants. Dkts. 47, 49.

Mr. Byler has had the opportunity to amend his Complaint to include these new allegations and theories of liability. He has chosen not to do so (and in a manner that delayed the Court's proceedings). This Court will make its recommendation without regard to factual matters not listed in the Complaint, save only for those discussed *supra* regarding the Motion to Take Judicial Notice.

## IV. DISCUSSION

The Plaintiffs' claims here should be dismissed both for lack of jurisdiction as to OSRV and for failure to state a claim as to Mr. Byler. First, Byler's claims are time barred. Second, he failed to substantively state a Sec. 1983 claim against any of the Defendants. Third, he failed to appreciate the immunity that the City Defendants have in this matter.

### a. This Court Lacks Subject Matter Jurisdiction over OSRV Because it Lacks the Capacity to Sue.

Federal courts, just like the federal government more broadly, have limited jurisdiction. The writ of authority to federal courts comes from Article III of the Constitution, giving federal courts jurisdiction over all "Cases" and "Controversies" under

federal law. This archaic language, however, has more bite than first glance would suggest. Federal courts are categorically barred from providing what is known as "advisory opinions."[10] In plain English, federal courts decide disputed cases, but they must not provide opinions on the law outside of that narrow capacity.

For there to be a "Case" under federal law, there must be at least two sides.[11] For there to be two sides, the parties must both exist and have capacity to sue in federal court.[12] Federal courts generally borrow the states' rules for capacity to sue.[13] Under Alaska law, OSRV does not exist. As such, a defect in capacity ends the matter before this Court can reach the merits of the case.

Because OSRV was dissolved,[14] it does not have capacity to sue. Because it does not have capacity to sue, it cannot participate in a "Case[ ]" or "Controvers[y[." Because this Court's civil jurisdiction is limited to "Cases" and "Controversies[,]" the Constitution's writ of authority to this Court does not extend to OSRV. As such, this Court cannot speak to the merits of OSRV's claims because it does not have the jurisdiction to

---

[10] *See, e.g.*, *Sierra Club v. Morton*, 405 U.S. 727, 732 n.3 (1972) ("Congress may not confer jurisdiction on Art. III federal courts to render advisory opinions, [ . . ], or to entertain 'friendly' suits, [. . .], or to resolve 'political questions,' [. . .], because suits of this character are inconsistent with the judicial function under Art. III."); *Princeton Univ. v. Schmid*, 455 U.S. 100, 103 (1982) (finding lack of jurisdiction in a moot case for there being a lack of a case or controversy); *Linda R.S. v. Richard D.*, 410 U.S. 614, 617 (1973) (lack of standing is a jurisdictional bar for federal courts).
[11] *United States v. Johnson*, 319 U.S. 302, 304 (1943).
[12] *LN Mgmt., LLC v. JPMorgan Chase Bank, N.A.*, 957 F.3d 943, 953 (9th Cir. 2020) ("Absent legal existence at the outset of" the suit, there cannot be "'a personal stake in the outcome of the controversy' sufficient 'to warrant his invocation of federal-court jurisdiction.'") (citing *House v. Mitra QSR KNE LLC,* 796 F. App'x 783 (4th Cir. 2019)).
[13] Fed. R. Civ. P. 17(b)(2) and (3).
[14] Dkt. 24, Ex. 2.

do so. As such, this Court recommends the dismissal of all claims by OSRV against all defendants for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).[15]

      **b.      Mr. Byler's Claims Should be Dismissed for Failure to State a Claim.**

Fed. R. Civ. P. 12(b)(6) empowers a federal court to dismiss a civil action for failure to state a claim. Under this standard, a court must accept the factual allegations as true, but it should not consider legal conclusions, such as "X person committed fraud," to determine whether even if the complaining party could establish the allegations as true, they amount to a viable claim.[16] Mr. Byler need not have presented detailed allegations, but he must demonstrate his entitlement to relief beyond simply reciting the elements of causes of action.[17] In more colloquial terms, a Rule 12(b)(6) motions asks, "so, what?" in response to a complaint. Even assuming that the plaintiff is telling the truth, which this type of motion does not concede, not all frustrations are legally actionable.

Courts should not, however, look beyond a complaint absent specific instances of finding judicial notice appropriate.[18] The parties have directed this Court a few times to the exhibits attached to the Complaint. However, this Court will avoid referencing these materials outside of that which it has judicially noticed. Merely attaching a document to a complaint does not necessarily make it part of the allegations in the complaint, and

---

[15] It is unclear which, if any, claims are unique to OSRV and not applicable to Byler. This Court will proceed as if all the claims can be asserted by Byler, though it notes the Defendants' objection to him standing in the shoes of the company.
[16] *See*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (1955); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).
[17] *Twombly*, 556 U.S. 544
[18] *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

reference to at least some of these materials would convert these motions into ones for summary judgment under Fed. R. Civ. P. 56.

This Court does not believe that Mr. Byler has met his pleading obligations, nor does it believe that another opportunity to amend would cure the deficiencies.

1. Statute of Limitations.

Each of Mr. Byler's claims is time barred. Sec. 1983, the basis of his claims, does not itself contain a statute of limitations.[19] However, plaintiffs are not permitted to bring claims under that statute in perpetuity. Instead, federal courts look to analogous state law.[20] "State law governs the statute of limitations period for § 1983 suits and closely related questions of tolling."[21] The general statute of limitations for torts in Alaska, including the "taking, detaining, or injuring [of] personal property," is two years. AS 09.10.070. "Claims for fraud and misrepresentation are tort claims, and thus are subject to the two-year statute of limitations provided in AS 09.10.070."[22]

"[T]he accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law."[23] It occurs "when the plaintiff has 'a complete and present cause of action,' [. . .] that is, when 'the plaintiff can file suit and obtain relief[.]'" *Id.* (citations omitted). This occurs "when the plaintiff knew or in the exercise of

---

[19] *Owens v. Okure,* 488 U.S. 235, 239 (1989).
[20] *Id.* at 240.
[21] *Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009) (citation omitted).
[22] *Bauman v. Day*, 892 P.2d 817, 825 (Alaska 1995); *DeNardo v. Murphy*, 781 F.2d 1345, 1347 (9th Cir. 1986) (applying a two-year statute of limitation to a Sec. 1983 civil rights case arising out of Alaska).
[23] *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (emphasis in original).

reasonable diligence should have known of the injury and the cause of that injury, but is not deferred until the plaintiff has evidence of fault."[24]

The Defendants argue that either December 2017, when the Vessel was seized or February 2018, when Mr. Byler's window to appeal closed, is the appropriate accrual date. Dkt. 25 at 19; Dkt. 26 at 17. The parties point to Mr. Byler's extensive interactions with the City in the Complaint to demonstrate that he was aware of the situation contemporaneously and that tolling was therefore not an issue. *See, e.g.*, Dkt. 26 at 20–21. At the latest, the Defendants argue that August 22, 2018, the date that Mr. Byler sent a letter detailing his position, should be the accrual date. Dkt. 25 at 21–24; Dkt. 26 at 18–21.

Byler "concurs that [. . .] the sinking of the vessel M/V Wild Alaskan in 2021 are past the 2-year Statute of Limitations[,]" but he argues that the fraud element is subject to Alaska's 10-year statute of limitations applicable to claims not otherwise specifically provided a statute of limitations.[25] As stated *supra*, fraud is provided for in the general statute of limitations for torts in Alaska. As such, the two-year limitation is appropriate.

This Court finds that Mr. Byler had the ability to bring suit and the knowledge of the underlying facts no later than August 22, 2018. While this Court appreciates the Defendants' well-reasoned arguments that the accrual date is earlier, at this point, it is a distinction without a difference. The Complaint was filed in March of 2023, and the latest

---

[24] *Lukovsky v. City and County of San Francisco*, 535 F.3d 1044, 1050 (9th Cir. 2008).
[25] *See*, Dkt. 52 at 14; AS 09.10.100 ("[a]n action for a cause not otherwise provided for may be commenced within 10 years after the cause of action has accrued.").

date for Mr. Byler to file under the most generous accrual date would have been in August of 2020. Byler's argument that a 10-year statute of limitations should apply is legally unsound, as fraud is subject to a two-year statute of limitations in Alaska for personal property. As such, these claims should be dismissed for untimeliness.

2. Section 1983.

Excusing the untimeliness, however, would not give Mr. Byler a path to recovery here. His substantive Section 1983 claims against all Defendants are deficient. This is not to mention the immunity issues detailed *infra*. As such, even if Byler is deemed to have timely brought these claims, they should still be dismissed.

42 U.S.C. § 1983 creates a federal forum for violations of federal rights. It reads, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage," deprives another of "any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress [ . . . .]" 42 U.S.C. § 1983. Municipalities are persons under Sec. 1983.[26] However, for an action to be maintained against a municipality under Sec. 1983, the plaintiff must prove more than just that an employee violated his federal rights. The plaintiff must also demonstrate that such deprivation of right was caused by an "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy[.]" *Id.* at 694.

---

[26] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978).

To sue a private entity under Sec. 1983, a plaintiff has additional hurdles. There must be a "sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself."[27] "The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment." *Id.* at 350. Providing an essential public service that is traditionally filled by a government may convert private action into a public one, but this is a rare occurrence.[28] The Highmark Defendants offer *Berger v. Hanlon*[29] to demonstrate how a private company could be held liable under Sec. 1983. Dkt. 26 at 25. In *Berger*, the there was an agreement between a media company and the government "to engage jointly in an enterprise that only the government could lawfully institute—the execution of a search warrant—for the mutual benefit of both the private interests of the media and the government officials' interest in publicity" and that "the government officers planned and executed the search in a manner designed to enhance its entertainment, rather than its law enforcement value[.]" *Id.* at 515. There was "'inextricable' involvement of the media with both the planning and execution of this search" as well as "the government's active involvement with the media's news gathering activities[.]" *Id.*

---

[27] *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974).
[28] *See, e.g.*, *Marsh v. Alabama*, 326 U.S. 501 (1946) (finding a company town to be subject to the limitations placed on governments by the Constitution.).
[29] 129 F. 3d 505 (9th Cir.1997), vacated and remanded on separate grounds by 526 U.S. 808, (1999), judgment reinstated by 188 F.3d 1155 (9th Cir. 1999).

Byler appears to argue that the Defendants have violated federal admiralty law generally, though he does not definitively identify how. Instead, he appears to argue that the federal government has sole jurisdiction over the waters immediately adjoining land or vessels. Dkt. 52 at 19–21. Admiralty jurisdiction is far more nuanced than the existence of boats and water. Without specific arguments as to which aspect of federal law was violated and how it is applicable to this case, this Court cannot find a claim to have been stated. This lack of pleading cannot survive a Rule 12(b)(6) challenge. He does not establish which federal right was implicated, which specific policy violated that right and how it violated that right, and to what specific extent, if any, the Highmark Defendants participated with the government to be subject to Section 1983.

3. Immunity.

Assuming that Byler has met the statute of limitations and has properly pleaded Section 1983 claims, many of the defendants in this case are categorically immune from the type of suit that Byler is bringing. The specific City Defendants that were or are on the Kodiak City Council have legislative immunity for their official legislative acts, and the other city employees named as Defendants, such as the mayor and the city manager, enjoy qualified immunity.

Local legislators, like members of a local city council, are immune from suit under Sec. 1983 for their official legislative acts.[30] "They are immune not for the sake of private indulgence, but so they may freely discharge their public duties as legislators." *Id*. "The

---

[30] *Kaahumanu v. County of Maui*, 315 F.3d 1215, 1219 (9th Cir. 2003).

burden of proof in establishing absolute immunity is on the individual asserting it."[31] Courts consider four factors:

> "whether the act involves ad hoc decisionmaking, or the formulation of policy"; (2) "whether the act applies to a few individuals, or to the public at large"; (3) "whether the act is formally legislative in character"; and (4) "whether it bears all the hallmarks of traditional legislation."

*Kaahumanu*, 315 F.3d at 1220 (citing *Bechard v. Rappold*, 287 F.3d 827, 829 (9th Cir.2002)). No one factor is dispositive, and they are not mutually exclusive of each other. *Id.*

The Complaint seems to argue that the Kodiak City Council could have intervened, but chose not to do so, before the city manager had the Vessel destroyed. Dkt. 1 at 13–14. Kodiak City Councilmembers "have and may exercise all legislative powers not prohibited by law or by the City Charter[.]" KCC 2.08.020. This includes appointing and removing the city manager. KCC 2.08.050. However,

> [n]either the council, any councilmember, nor the mayor, may participate in any manner, except as provided in this charter, in the appointment or removal of officers and employees of the City. Except for the purpose of inquiry, the council and the mayor shall deal with the administrative service solely through the city manager.[32]

The role of the Kodiak city councilmembers appears to be primarily, if not exclusively, legislative. To the extent that they have an advice and consent role in overseeing the city manager, this Court finds such duties to be too extrinsically aligned with the legislative call for the council and does not believe that the councilmembers should be subject to liability

---

[31] *Trevino v. Gates*, 23 F.3d 1480, 1482 (9th Cir.1994).
[32] Charter of the City of Kodiak, Alaska, Art. II, Sec. 5.

under Sec. 1983 for any such actions or inactions in that capacity. At a minimum, Byler has not pleaded anything that could convince this Court that the councilmembers are being charged with anything but their official legislative duties.

Qualified immunity protects municipal employees from being personally sued for their official duties. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[33] Therefore, a plaintiff must show, in addition to a deprivation of a federal right, that "the contours of the right [were] sufficiently clear that a reasonable official would understand that what [the official] is doing violates that right."[34]

Mr. Byler has not made this requisite showing. In addition to failing to properly plead a violation of a federal right (at most, he argues that Kodiak procedures were not followed), he has not demonstrated how city employees would have been put on notice by case law, statute, or other legal device clearly demonstrating which of his rights were violated, and how. As such, to the extent that the analysis reaches this far into the merits, the city employees are protected by qualified immunity.

## V. CONCLUSION

The deficiencies in the Complaint are unlikely to be resolved by more artful pleading or advice of counsel. OSRV does not exist, and new allegations cannot change that. The claims advanced by Mr. Byler are time barred, do not identify a federal right that

---

[33] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).
[34] *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

was violated, and fail to account for the City Defendants' immunity. Byler was provided an opportunity to revise his Complaint after the motions to dismiss were filed, but he chose not to do so. For these reasons, this Court further recommends that the dismissal be done with prejudice.

For the reasons set forth above, this Court recommends pursuant to 28 U.S.C. § 636(b)(1)(B) that:

1) the Motion to Take Judicial Notice at Docket 24 be **GRANTED;**

2) the Motion to Dismiss at Docket 25 be **GRANTED**;

3) the Motion to Dismiss at Docket 26 be **GRANTED**;

4) all Plaintiff Oil Spill Response Vessels, LLC's claims against all Defendants be **DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION** under Fed. R. Civ. P. 12(b)(1); and

5) all Plaintiff Darren K. Byler's claims against all Defendants be **DISMISSED WITH PREJUDICE** for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

DATED this 4th day of September 2024, at Anchorage, Alaska.

_____
MATTHEW M. SCOBLE
CHIEF U.S. MAGISTRATE JUDGE

Pursuant to D. Alaska Loc. Mag. R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than the CLOSE OF BUSINESS on September 18, 2024. Failure to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest

those findings on appeal. *Miranda v. Anchondo*, et al., 684 F.3d 844 (9th Cir. 2012). The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation. *United States v. Howell*, 231 F.3d 615 (9th Cir. 2000). Objections and responses shall not exceed five (5) pages in length and shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support. Response(s) to the objections shall be filed on or before the CLOSE OF BUSINESS on September 25, 2024. The parties shall otherwise comply with provisions of D. Alaska Loc. Mag. R. 6(a). Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment. *See Hilliard v. Kincheloe*, 796 F.2d 308 (9th Cir. 1986).